## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| _____ ) | |
| SunButter LLC, ) | |
| ) | Civil Action No.:_____ |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT AND** |
| ) | **JURY TRIAL DEMAND** |
| Jams Frozen PB&J Inc. ) | |
| The Dropout Companies ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff SunButter LLC ("Plaintiff"), for its Complaint against Defendants Jams Frozen PB&J Inc. and The Dropout Companies, Inc. ("Defendants"), states and alleges as follows:

### INTRODUCTION

1.      Plaintiff is a North Dakota-based food manufacturer. Since 2023, Plaintiff has operated as the source of the JAMMIES® sandwiches.

2.      Plaintiff's JAMMIES® sandwiches are carried in over 8,000 retail locations, including Walmart, Kroger, and Albertsons, with the mark JAMMIES subject of the Company's Federal Trademark Registration No. 7,907,295.

3.      Plaintiff has advertised and promoted its JAMMIES® trademark extensively, developing widespread goodwill and recognition with its local and national customers. As a result, Plaintiff's JAMMIES® trademark is entitled to a broad scope of protection against unpermitted third-party use or registration.

4.      Defendants have begun using the mark JAMS in connection with identical frozen sandwiches incorporating jam and nut or seed butter.

5.      Defendants also sell in national retail markets, including Target and Walmart, to the same local and national consumers to whom Plaintiff markets its goods.

6.      Defendants' goods are not Plaintiff's goods nor are they associated with Plaintiff in any way. Consumers would not, however, know that based on Defendant's use of its confusingly similar trademark.

7.      Defendants' unfair activities—confusing to consumers and harmful to Plaintiff—must be stopped.

## THE PARTIES

8.      Plaintiff is a North Dakota corporation with a principal place of business at 501 42nd Street NW, Fargo, ND 58102, USA.

9.      On information and belief, Defendant Jams Frozen PB&J Inc. is a Delaware corporation with its principal place of business at 1009B Southside Avenue, Nashville, TN 37203, USA.

10.     On information and belief, Defendant The Dropout Companies, Inc. is a Delaware corporation with its principal place of business at 1009A Southside Avenue, Nashville, TN 37203, USA.

## JURISDICTION

11.     This is an action for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1119 and trademark infringement and unfair competition under the common law of the State of Minnesota and Minnesota Statute § 325D.44.

This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 as well as supplemental jurisdiction under 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Defendants under Minnesota Statute and the Due Process Clause of the Constitution of the United States. First, Defendants transact business within the State. Second, personal jurisdiction over Defendants is also proper because, through offering goods under the infringing trademark, they have engaged in a tortious act—trademark infringement—within the State of Minnesota.

13.     Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b)(1)-(2). Defendants promote, offer, and sell their goods under the infringing trademark to consumers in this District. Specifically, Defendants offer frozen jam and peanut butter sandwiches. Plaintiff has suffered injury in this District because of Defendants' acts of trademark infringement, false designation of origin, deceptive trade practices, and unfair competition.

## BACKGROUND

*Plaintiff's Distinctive Trademarks*

14.     Plaintiff sells its world-renowned frozen jam and sunflower seed-butter sandwiches under the JAMMIES® trademark and has done so in the United States since at least as early as August 2023.

15.     Plaintiff is the owner of the following registered United States trademark registration for the JAMMIES mark for use in connection with sandwich goods:

| Mark/Name/RN/SN | Full Goods | Status/Key Dates | Owner Information |
|---|---|---|---|
| JAMMIES<br>Registration No. 7,907,295 | Sandwiches, namely, sunflower butter and jelly sandwiches | First Use: August 2023<br>Filed: December 7, 2022<br>Registered: August 19, 2025<br>Register Type: Principal Register | SunButter LLC, 501 42nd Street NW, Fargo, ND 58102<br>United States of America |

Attached hereto as Ex. A, find registration certificate for the mark set forth above.

16.     An example of Plaintiff's mark as it appears on Plaintiff's website and product boxes is set forth below:



17.     U.S. Registration No. 7,907,295 is conclusive evidence of the validity of Plaintiff's ownership of, and Plaintiff's exclusive right to use, the claimed trademarks or any confusingly similar variation thereof in connection with the associated goods and those goods in the natural zone of expansion therefor.

18.     Since at least as early as August 2023, Plaintiff has advertised and promoted its JAMMIES trademark extensively, including online and via social media, and it has made substantial sales of its goods under the JAMMIES trademark.

19.    The result of these activities is that the JAMMIES mark has achieved widespread consumer recognition, making it a strong mark entitled to broad protection against third party infringement.

20.    In addition to and in light of the above-described advertising and promotion, the JAMMIES trademark has gained such widespread consumer recognition and secondary meaning that they have acquired distinctiveness. Indeed, consumers have come to know, rely upon, and recognize the JAMMIES trademark as the identifying indicium of Plaintiff and its goods.

21.    As a result of substantial promotional, advertising, publicity, and public relations activities, the JAMMIES trademark has acquired substantial goodwill and is an extremely valuable commercial asset.

*Defendants' Confusingly Similar Trademarks*

22.    Despite Plaintiff's rights in and to its JAMMIES trademark, Defendants have and continue to infringe upon Plaintiff's exclusive trademark rights through their advertising, promotion, use, and sale of its goods under the mark JAMS. An example of Defendants' JAMS mark as it appears on Defendants' website is set forth below:







23.     Defendants began using the infringing JAMS mark after Plaintiff had already used its confusingly similar and famous JAMMIES mark in commerce in the United States.

24.     Defendants' use of the infringing JAMS mark and promotion and sale of their goods under those trademarks is without Plaintiff's authorization or consent.

25.     Defendants have also sought federal registration for two JAMS-formative marks (Ser. Nos. 99/042,104 and 98/671,331. On October 3, 2025, Plaintiff's Registration was cited in the Trademark Office's likelihood of confusion refusal of Defendant's pending application for federal registration of the mark JAMS, Ser. No. 99/042,104.

*Defendants' JAMS Mark is Likely to Cause Confusion with Plaintiff's JAMMIES Mark*

26.     Defendants are offering similar goods as Plaintiff under confusingly similar trademarks.

27.    Defendants and Plaintiff both use their respective trademarks identified above in connection with identical goods – principally, frozen jam and nut or seed butter based sandwiches – thus, heightening the potential for consumer confusion.

28.    Plaintiff's goods offered under its JAMMIES mark and Defendants' goods offered under their JAMS mark are marketed and promoted in the same geographic area, i.e., nationally, at retailers such as Target and Walmart.

29.    Plaintiff's goods offered under its JAMMIES mark and Defendants' goods offered under their JAMS mark are also marketed and promoted to the same consumers through overlapping channels of trade. Both Plaintiff and Defendants market, promote, and sell their goods to the entire public.

30.    The JAMS mark is confusingly similar to Plaintiff's earlier used and registered JAMMIES trademark. Both the Plaintiff's and the Defendants' marks are used in conjunction with the provision of frozen sandwich goods and are sold to overlapping consumers via the same channels of trade. The JAMS mark is nearly identical in sight, sound, and meaning to the JAMMIES mark owned by Plaintiff. Both parties' marks feature the word JAM(S) and based on consumers general rather than specific memory of brand identifiers, they are likely to view and recall these marks as indistinguishable.

31.    Defendants' use of the JAMS mark, in connection with the same type of goods targeted to the same consumers through the same trade channels as Plaintiff, constitutes false designation of origin, trademark infringement, and unfair competition, as such use is likely to confuse the relevant consuming public into believing the goods being offered under the JAMS mark are the same as, offered by, affiliated with, sponsored by, or otherwise associated with Plaintiff.  This is particularly true given the market context in which consumers are viewing the

parties' logo designations and the fact that a purchaser's recollection of design marks is often of a general, rather than specific, nature, such that the marks may be confusingly similar despite any alleged differences between them.

32.     Defendants are and have been aware of Plaintiff's prior rights in its JAMMIES mark and the likelihood of confusion created by use of the JAMS mark, yet they continue to infringe upon the same. On October 3, 2025, Plaintiff's Registration was cited in the Trademark Office's likelihood of confusion refusal of Defendants' pending application for federal registration of the mark JAMS, Ser. No. 99/042,104.

33.     Moreover, as early as December 10, 2025, counsel for Plaintiff sent a letter to Defendant Jams Frozen PB&J Inc. requesting assurances that it fully and permanently cease and desist from further use of the mark JAMS. *See* Ex. B.

34.     On December 26, 2025, counsel for Defendants responded to Plaintiff's December 10 letter refusing to cease use of the JAMS mark. *See* Ex. C.

35.     Defendants' use of the JAMS mark and sale of goods under the same has been and is willful and in reckless disregard of Plaintiff's rights.

36.     On information and belief, Defendants are deriving and will continue to derive measurable revenue from their goods provided under the JAMS mark. As a result of Defendants' unauthorized use of trademarks and logo designations that are confusingly similar to the JAMMIES mark, Defendants are being unjustly enriched at Plaintiff's expense.

37.     The likely confusion caused by Defendants' use of the infringing JAMS mark has and will continue to harm Plaintiff. Specifically, Plaintiff has developed a reputation for providing high-quality frozen sandwiches under the JAMMIES mark. Due to the confusingly similar nature of the JAMS mark, consumers are likely to wrongly associate Plaintiff and its goods with the

Defendants and their goods which may not be of the same quality as Plaintiff's goods offered under its JAMMIES mark.

38.    The risk of confusion is particularly dangerous here, where consumers of Plaintiff's JAMMIES branded products may be seeking out an alternative to nut butter based frozen sandwiches due to severe and life-threatening nut allergies. The heightened risk resulting from Defendants' confusingly similar JAMS mark used in connection with almost identical goods must be enjoined as a matter of public safety.

39.    Moreover, through its unauthorized use of a trademark that is confusingly similar to the JAMMIES mark, Defendants (a) have traded upon and threaten to further trade upon the significant and valuable goodwill in Plaintiff's JAMMIES mark; (b) are likely to cause public confusion as to the source, sponsorship, or affiliation of Defendant's goods vis-à-vis Plaintiff and its brand; (c) have damaged and threaten to further damage Plaintiff's significant and valuable goodwill in its JAMMIES mark; (d) have injured and threaten to further injure Plaintiff's right to use its JAMMIES mark as the exclusive indicia of origin of Plaintiff's frozen sandwiches throughout the United States; and (e) have lessened the capacity of Plaintiff's JAMMIES mark to indicate that its goods originate from Plaintiff.

40.    Defendants' continued use of their JAMS mark will continue to confuse consumers, erode the goodwill of Plaintiff and its JAMMIES mark and harm the business and commercial reputation of Plaintiff.

41.    Unless these infringing acts by Defendants are restrained by this Court, they will cause irreparable injury to Plaintiff and to the public, for which there is no adequate remedy at law.  Defendants should be enjoined from continuing their infringing conduct.

## COUNT I - FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

42.     Plaintiff repeats and re-alleges paragraphs 1-41 above.

43.     Defendants' promotion, use, and sale of their goods under their JAMS mark, which are confusingly similar to Plaintiff's JAMMIES mark and which are used in connection with the promotion and sale of goods identical to and related to the goods of Plaintiff, is likely to cause confusion, to cause mistake, or to deceive as to the source, affiliation, connection, or association of Defendants or their goods with Plaintiff or its goods, and/or as to the sponsorship or approval of Defendants' goods by Plaintiff in violation of 15 U.S.C. § 1125(a).

44.     Defendants were aware of Plaintiff's rights in the JAMMIES mark and the likely confusion caused by their use of the JAMS mark since at least as early as October 3, 2025, and Defendants still chose to use their infringing JAMS mark. Defendants' promotion, use, and sale of goods under the JAMS mark from at least that date onward is willful and in reckless disregard of Plaintiff's rights.

45.     Defendant's acts constitute a false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

46.     Plaintiff has been damaged by the actions of Defendants in an amount which is as yet undetermined, and Plaintiff is entitled to actual damages, trebled damages, an accounting of Defendant's profits, and attorneys' fees and costs for Defendants' willful activities pursuant to 15 U.S.C. § 1117.

47.     If the acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II – FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

48.    Plaintiff repeats and re-alleges paragraphs 1-47 above.

49.    The acts of Defendants complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, approval, or affiliation as between Defendants and their goods under the JAMS mark on the one hand, and Plaintiff and its goods under the JAMMIES mark on the other.

50.    Defendants' conduct constitutes federal trademark infringement in violation of 15 U.S.C. § 1114(1).

51.    As a direct and proximate result of Defendants' infringement, Plaintiff has been, is now, and, unless Defendants are enjoined by the Court, will continue to be irreparably harmed and damaged, and Plaintiff has no adequate remedy at law.

52.    By reason of Defendants' bad faith and willful infringement, Plaintiff is entitled to recover actual damages, treble damages, an accounting for Defendants' infringing profits, attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117, as well as injunctive relief pursuant to 15 U.S.C. § 1116.

## <u>COUNT III - COMMON LAW UNFAIR COMPETITION</u>

53.    Plaintiff repeats and re-alleges paragraphs 1-52 above.

54.    Plaintiff has common law rights in the JAMMIES mark in connection with its frozen sandwich goods.

55.    The acts of Defendants complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, approval, or affiliation as between Defendants and their goods under the JAMS mark on the one hand, and Plaintiff and its goods under the JAMMIES mark, on the other.

56.     The above-described acts, the resulting likely confusion, and Defendants' appropriation, promotion, and/or use of Plaintiff's JAMMIES mark to identify and sell their goods constitutes unfair competition under the common law of the State of Minnesota.

57.     As a direct and proximate result of Defendants' unfair competition, Plaintiff has been, is now, and, unless Defendants are enjoined by the Court, will continue to be irreparably harmed and damaged, for which Plaintiff has no adequate remedy at law.

58.     Plaintiff is entitled to actual and enhanced damages as well as injunctive relief.

**COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT**

59.     Plaintiff repeats and re-alleges paragraphs 1-58 above.

60.     The acts of Defendants complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, approval, or affiliation as between Defendants and their goods under the JAMS mark on the one hand, and Plaintiff and its goods under the JAMMIES mark, on the other.

61.     Defendants' conduct constitutes common law trademark infringement.

62.     As a direct and proximate result of Defendants' infringement, Plaintiff has been, is now, and, unless Defendants are enjoined by the Court, will continue to be irreparably harmed and damaged for which Plaintiff has no adequate remedy at law.

63.     Plaintiff is entitled to actual and enhanced damages as well as injunctive relief.

**COUNT V – CANCELLATION OF PENDING REGISTRATION SER. NOS. 99/042,104 & 98/671,331 (15 U.S.C. § 1119)**

64.     Plaintiff repeats and re-alleges paragraphs 1-63 above.

65.     Plaintiff owns the federally registered, valid JAMMIES Mark.

-14-

66.     Defendants have used the JAMS Mark, without authorization from Plaintiff, in the course of their business.

67.     Defendants' applications to register the JAMS Mark (Ser. Nos. 99/042,104 & 98/671,331) infringe upon Plaintiff's rights in its federally registered JAMMIES Mark.

68.     Because Defendants have used the JAMS Mark in connection with the identical and closely related services as Plaintiff, Defendants' unauthorized use of the JAMS Mark has and is likely to cause confusion with Plaintiff's use of the JAMMIES Mark or otherwise cause misunderstanding with Plaintiff's use of the JAMMIES Mark.

69.     Defendants' use of the JAMS Mark has already caused multiple instances of actual confusion.

70.     By engaging in the foregoing acts, Defendants have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of their services. Consumers are likely to confuse or mistake Plaintiff as the source, sponsor, approver, or certifier of Defendants goods, or Defendants as the source, sponsor, approver, or certifier of Plaintiff's goods.

71.     By engaging in the foregoing acts, Defendants have caused a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with, or certification by, Plaintiff. Consumers are likely to confuse or mistake Defendants as being affiliated, connected, or associated with, or certified by, Plaintiff, or Plaintiff as being affiliated, connected, or associated with, or certified by, Defendants.

72.     Plaintiff is entitled to actual and enhanced damages as well as injunctive relief.

**COUNT VI – DECEPTIVE TRADE PRACTICE UNDER MINN. STAT. § 325D.44**

73.     Plaintiff repeats and re-alleges paragraphs 1-72 above.

-15-

74.    Plaintiff owns the federally registered, valid JAMMIES Mark.

75.    Defendants have used the JAMS Mark, without authorization from Plaintiff, in the course of their business.

76.    Because Defendants have used the JAMS Mark in connection with the identical and closely related services as Plaintiff, Defendants' unauthorized use of the JAMS Mark has and is likely to cause confusion with Plaintiff's use of the JAMMIES Mark or otherwise cause misunderstanding with Plaintiff's use of the JAMMIES Mark.

77.    Defendants' use of the JAMS Mark has already caused multiple instances of actual confusion.

78.    By engaging in the foregoing acts, Defendants have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of their services. Consumers are likely to confuse or mistake Plaintiff as the source, sponsor, approver, or certifier of Defendants goods, or Defendants as the source, sponsor, approver, or certifier of Plaintiff's goods.

79.    By engaging in the foregoing acts, Defendants have caused a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with, or certification by, Plaintiff. Consumers are likely to confuse or mistake Defendants as being affiliated, connected, or associated with, or certified by, Plaintiff, or Plaintiff as being affiliated, connected, or associated with, or certified by, Defendants.

80.    By engaging in the foregoing acts, Defendants have knowingly engaged in deceptive trade practices in violation of Minn. Stat. § 325D.44.

81.    Plaintiff has been directly injured by Defendants' deceptive trade practices complained about herein and has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

82.    By reason of Defendants' bad faith and willful acts described herein, Plaintiff is entitled to injunctive relief, actual and punitive damages, and costs and attorneys' fees pursuant to Minn. Stat. § 325D.44.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

A.    Permanently enjoining and restraining the Defendants and Defendants' managers, members, directors, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under Defendants:

1.    from using in any way the JAMS mark or any trademark that is confusingly similar to the JAMMIES mark in connection with frozen sandwich goods;

2.    from committing any acts of unfair competition, from creating a false designation of origin, and from engaging in deceptive trade practices with respect to the JAMS mark;

3.    from using in any manner menus, packaging, labels, signs, literature, display cards, apparel, or other packaging, advertising, or promotional materials, or other materials which include the infringing JAMS mark, and any other trademark confusingly similar to Plaintiff's JAMMIES mark;

4.    from making any statements on promotional materials or advertising for Defendants' goods which are false or misleading as to source or origin;

5.      from committing any acts of trademark infringement, false designation of origin, deceptive trade practices, or unfair competition calculated to cause members of the trade or purchasing public to believe that Defendants' goods are the goods of Plaintiff or sponsored by or associated with, or related to, or connected with, or in some way endorsed or promoted by Plaintiff under the supervision or control of Plaintiff.

B.      Requiring that the Defendants destroy any and all packaging, containers, signs, packaging materials, printing plates, apparel, and advertising or promotional materials and any materials used in the preparation thereof, which in any way use or make reference to the infringing JAMS mark or any trademark confusingly similar to the JAMMIES mark.

C.      Requiring that Defendants, within thirty (30) days after service of notice in entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon the Plaintiff's counsel a written report under oath setting forth details of the manner in which they have complied with the Court's order pursuant to paragraphs A - B above.

D.      Awarding Plaintiff profits, actual damages, trebled or enhanced damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117 and common law.

E.      Canceling Defendants' JAMS Applications, Ser. Nos. 99042104 & 98671331.

F.      Awarding pre- and post-judgment interest in the highest amount allowable by law.

G.      Awarding Plaintiff such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury on all issues so triable.

Dated: February 26, 2026          **MERCHANT & GOULD. P.C.**

                              */s/Heather Kliebenstein*
                              Heather Kliebenstein
                              150 South Fifth Street, Suite 2200

-18-

Minneapolis, Minnesota 55402
hkliebenstein@merchantgould.com
(612) 332-9081

*Attorney for Plaintiff*
*SunButter LLC*